NOTICE

Decision filed 06/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220641-U

NO. 5-22-0641

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 20-CF-68 |
| | ) | |
| CARMEN PETAK, | ) | Honorable |
| | ) | Mitchell K. Shick, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction is vacated where trial counsel's waiver of defendant's right to an evidentiary hearing on the issue of whether her statements should be suppressed was ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant, Carmen Petak, was convicted of aggravated battery and was sentenced to a six-year prison term. Defendant appeals the conviction, arguing that her trial counsel was ineffective for waiving her right to an evidentiary hearing on the issue of whether her statements should be suppressed. She further argues that the trial court erred in striking a portion of her testimony when her counsel objected to the State's request to call a rebuttal witness that was not included on its witness list and by denying her trial counsel's request for a *Frye* hearing on the issue of whether a finding of retinal hemorrhage was a sufficient basis to diagnose shaken baby syndrome.

1

¶ 3                                          I. BACKGROUND

¶ 4     Defendant is a former Mattoon Police and Illinois State Police officer. After she left law enforcement, she started a daycare in her home. On January 23, 2020, K.K., a six-month old child, was dropped off by his father, Lucas, at defendant's daycare at 8:15 a.m. Around 2:45 p.m., K.K. projectile vomited twice and thereafter experienced three instances of unconsciousness. K.K.'s mother, Abby, picked K.K. up from daycare shortly thereafter and defendant provided an account of what happened that afternoon at the daycare. Abby took K.K. to the doctor. K.K.'s treating physicians believed that his injuries stemmed from "Shaken Baby Syndrome." Defendant provided statements to the Mattoon Police Department on January 27, 2020, and February 4, 2020.

¶ 5     On February 7, 2020, defendant was charged, by information, with one count of aggravated battery in violation of section 12-3.05(b)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(b)(1) (West 2018)), a Class X felony. The information alleged that defendant "knowingly caused great bodily harm to K.K., a child under the age of 13 years, and in that Defendant shook K.K. or inflicted blunt force trauma on K.K., causing bleeding on K.K.'s brain." A warrant for her arrest was issued, and defendant was arrested the same day. She was originally appointed counsel but later retained Anthony Bruno as her attorney on February 18, 2020.

¶ 6     On April 21, 2022, defendant moved for a *Frye* hearing[1] on the issue of whether retinal hemorrhage was a definitive sign of abusive head trauma. The motion was supported with two medical journal articles published in EYE, the official medical journal of the Royal College of Ophthalmologists, in 2009. One stated that retinal hemorrhage was not a sign of abusive head trauma; the other stated it was. The *Frye* motion was also supported with a 30 page memorandum

---

[1]*Frye* hearings stem from the decision in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) that addressed the requirement for determining whether scientific evidence was admissible at trial. Illinois continues to follow the *Frye* standard. *People v. McKown*, 226 Ill. 2d 245, 254-55 (2007).

of law addressing the alleged medical controversy. The motion requested exclusion of the State's witnesses unless a *Frye* hearing was held.

¶ 7    On May 2, 2022, the State filed a response stating defendant's request for *Frye* hearing should be denied based on the legislature's enactment of the Shaken Baby Prevention Act (410 ILCS 260/1 *et seq.* (West 2022)). The State further argued, citing *People v. Cook*, 2014 IL App (1st) 113079, ¶ 53, that its expert witnesses would be providing testimony on their medical training and observations and therefore, no *Frye* hearing was necessary.

¶ 8    The court held a hearing on defendant's motion on May 5, 2022. The trial court stated that in its preparation for the hearing it reviewed *People v. Glucksmann*, 2019 IL App (1st) 170515-U, *People v. Petrie*, 2021 IL App (2d) 190213, *People v. Schuit*, 2016 IL App (1st) 150312, and *People v. Snell*, No. 2-08-0949 (2011) (unpublished order under Illinois Supreme Court Rule 23). It stated that those cases dealt with similar circumstances and held that a *Frye* hearing was unnecessary for what was commonly called shaken baby syndrome. It then asked defense counsel if he had any case law to the contrary. Defense counsel stated that its request for a *Frye* hearing was based on a shaken eye hypothesis more than a shaken baby hypothesis and no court had addressed the issue. During argument, counsel argued that he was seeking to exclude testimony related to the vitreoretinal traction or shaken eye hypothesis because it had not been previously addressed. The court stated that *Snell* dealt with that issue and asked counsel if he had read that decision. Defense counsel stated he had not. The remainder of the argument addressed the medical articles attached to the motion and the controversy surrounding the issue. He further discussed *Del Prete v. Thompson*, 10 F. Supp. 3d 907 (N.D. Ill. 2014), a *habeas corpus* case from Illinois in which a 97-page decision was issued that found that "in light of the most recent medical evidence, no reasonable juror could have found that the daycare worker was guilty."

¶ 9    The State responded that its experts were basing their conclusions on what was seen on the CT scans and therefore their opinions were based on reasonable medical certainty. It argued that it went to the weight of the evidence, not its admissibility. It agreed that the cases previously reviewed by the court were indicative that a *Frye* hearing was unnecessary.

¶ 10    After hearing the arguments, the court stated that if Illinois were a *Daubert* jurisdiction, a different result might be found. However, Illinois was a *Frye* jurisdiction, and it was required to follow *Frye*. Therefore, based on the current law, the court denied defense counsel's request for a *Frye* hearing.

¶ 11    On May 19, 2022, defense counsel filed a motion to exclude defendant's statements stemming from the two police interviews on January 27, 2020, and February 4, 2020. The motion claimed that defendant's statements were not made voluntarily. The motion contended that defendant's statements were involuntary because she was subjected to mental abuse during the police interviews. The motion further contended that defendant's statements were involuntary because the police interview continued after she invoked her right to counsel. The motion also requested, in the alternative, that defendant's expert on the issue of whether defendant was coerced be allowed to testify at the trial. The motion was further supported by a memorandum of law and a report prepared by Dr. Robert Stanulis, addressing the allegedly coercive methods employed on defendant.

¶ 12    A hearing on defendant's motion was held on May 31, 2022. After summarizing defendant's pleading, the court stated, "So, we are set for that motion. It's your motion, Mr. Bruno. Did the State file a response?" The State replied that it had not yet had an opportunity to file a response. It stated, "We would be able to get our officers here sometime this week, next week, or the week after to hear it. I don't know whether or not he would be able to get his expert here in

4

that time, but the State would be ready to proceed." The court asked for defense counsel's response. Defense counsel stated, "Your Honor, I didn't anticipate the Court would have this gentleman come from Portland between now and June 27th for an in-person hearing. I assumed that the Court would rule on this without a hearing. I perhaps could get him here."

¶ 13 Thereafter, the court stated, "I don't know that I have time to have a full-day hearing. I don't with my jury trial schedule." Defense counsel noted that the last time they were in court, the trial judge "made it fairly clear that the trial on June 27 was not moving, so I planned accordingly." Thereafter, the court stated it would hear argument after noting that it read the motion and the cases set forth therein. Defense counsel stated, "Your Honor, the Court is busy[,] and I don't have a lot to add to it, so I am not going to make an argument about it. I will ask to stand on the motion."

¶ 14 The State responded by advising the court that it was the State's burden to show by a preponderance of the evidence that the confession was voluntary. It addressed the factors and stated that the totality of circumstances revealed "by no means was there coercion in that statement. I do agree that their expert witness could come and testify to the weight they believe should be given to such confession, but that overall[,] our officers would come and testify, we would show you the video, that the length was not overly burdensome." The State concluded that "based on the totality of the circumstances, that the confession was voluntary."

¶ 15 Defense counsel argued that expert testimony was required to determine the issue due to the insight into what the jury would see on the video. The court stated,

> "I think clearly from the expert's own report he suggests that the issue of voluntariness or whether this was a false confession really is for the trier of fact and for the jury. He doesn't conclude in his report *** that the Court should determine this to be an involuntary confession where I strike it. He doesn't say it was a confession. Statement, I suppose, is

what we're talking about. So, given that, I do believe that the caselaw is clear in that a jury can use this expert's assistance in determining whether or not the statements made were, in fact, confessions or simply statements made for the reasons the doctor recited in his report, based upon his expertise, his review of the confession, and to leave it to the jury to determine why she said the things she said, but can help the jury understand that perhaps statements made based upon the tactics used could produce a false statement or confession, as he has opined. So, I'm going to allow his testimony. I'm going to deny the motion to exclude her statements as being involuntary, as I find from the proffers made—including the expert's own report—that they were not involuntary. Now, whether or not they were made—she made false statements based upon the pressures given, I will leave that to the jury. I think that's an appropriate jury determination as to the weight to be given any of the statements she made given the tactics used."

¶ 16 Defense counsel asked for confirmation as to whether the court was prohibiting any particular line of questioning of its expert on the issue of the voluntariness of defendant's statement. The court stated there would be no prohibition, the State could make their objections at the trial, and again confirmed it would allow defendant's expert to testify at trial.

¶ 17 On June 13, 2022, the State filed a second count against defendant, by information, that also alleged aggravated battery. The count involved the same allegations and same child with a second incident occurring on January 15, 2020.

¶ 18 On June 14, 2022, defense counsel filed a motion *in limine* to exclude two witnesses the State recently disclosed, Dr. Lee and an unnamed pediatric neurologist from St. Louis Children's Hospital. The motion further requested dismissal of count II, noting the trial was scheduled to start on June 27, 2022.

6

¶ 19    On June 22, 2022, the State filed a response to defendant's motion *in limine* and dismissal of count II. The response argued that it had discretion as to which charges should be filed and that it was not barred from bringing additional charges. As to the witnesses, the State argued that they were the victim's treating physicians and defense counsel was aware of their existence as their names were included in the victim's medical records. On June 22, 2022, the State also filed an amended information changing the date of the second alleged incident in the second count from January 15, 2020, to January 14, 2020.

¶ 20    On June 24, 2020, a final pretrial hearing was held. The court advised the parties that it realized there was a pending issue related to defendant's motion to suppress defendant's statements. It noted that no hearing was held, or argument provided, related to defendant's claim that the interrogation continued despite her request for legal counsel. Defense counsel referenced the court's busy docket on the day of the earlier hearing and recalled that he stated he would stand on his motion. He offered to provide a brief argument on the issue. The court responded, "Well, I think you need more than that in order to comply with constitutional requirements for effective assistance of counsel." It continued by stating, "[Y]ou can't preserve your record and I can't make a ruling without that interrogation in front of me or without evidence in front of me ***." Defense counsel indicated that he believed the issue was fully decided during the previous hearing and that the motion was denied. The court responded that it believed the record needed to be clearer. Defense counsel began to provide a proffer but was stopped by the court again, stating that evidence and a record were required. Defendant was called as a witness and testified about the interrogation. Following the State's cross-examination, the State played the video from the February 4, 2020, police interview. Thereafter, defense counsel made his argument. The court advised defense counsel that it wanted him to address the specific issue raised at this hearing.

Defense counsel stated, "I've addressed that as far as I'm going to." The court stated, "You've only addressed the voluntariness. You haven't cited any case law that supports your position. Do you have any case law?" Defense counsel responded, "I do not have any case law." Thereafter, the State provided its argument, and the trial court issued its ruling stating,

> "The questions asked by the defendant in this case, in my opinion, were ambiguous and did not—would not have placed a reasonable police officer on notice that she was requesting not to say anything more until she had an attorney present. Based on the case law and the facts, I'm denying the motion to suppress her statement. The voluntariness, as I've mentioned earlier, I believe that's an appropriate issue to be argued in front of the jury, to have experts comment on the conduct of the police officers in this case and what effect it had on the defendant's statements. That's a jury question. Not one for the Court. So[,] my ruling will remain the same as it relates to the voluntariness of these statements."

¶ 21    Thereafter, the court addressed the pending motion *in limine* regarding the State's two witnesses and the motion to dismiss. Following argument, the trial court denied both motions.

¶ 22    Defendant's trial took place from June 27, 2022, to July 5, 2022. The jury ultimately found defendant guilty on count I but not guilty on count II.

¶ 23    On July 25, 2022, defense counsel filed a motion for a new trial. The motion contended the trial court erred in allowing the State to file a new count two weeks before trial and further amending the second count to change the date from January 15, 2020, to January 14, 2020, five days before trial. The motion further argued that the trial court erred in not allowing for a *Frye* hearing on the retinal hemorrhage issue, noting that even the State's expert conceded the theory was controversial. The motion contended that the trial court erred in finding defendant's second day interview was voluntary and further erred by not dismissing one juror who stated during

8

*voir dire* that she performed shaken baby research, did not think she could set it aside for the hearing, despite defense counsel asking to excuse for cause or as a peremptory challenge. The motion also argued that the trial court erred in making defense counsel choose between allowing the State to call a witness in rebuttal—who was never disclosed in discovery—or striking a portion of defendant's testimony despite the State failing to object to the testimony at the hearing. As to the last issue, defendant testified at the hearing regarding statements made by DCFS agent JoDee Lanman. Defendant stated that she asked Ms. Lanman what would happen to her as a daycare operator if a child had kidney failure, heart failure, or died in her care even if she was not responsible for the underlying condition. Defendant stated that Ms. Lanman told her that she would "go to jail." At the time the testimony was provided, no objection was presented by the State. However, following defendant's testimony, the State moved to call Ms. Lanman as a rebuttal witness. Defense counsel objected stating that Ms. Lanman was never listed as a possible witness by the State. The trial court found, *sua sponte*, that defendant's statement as to Ms. Lanman's reply was hearsay and then provided an ultimatum to defense counsel in which he could either agree to strike defendant's testimony or allow the State to proceed with the rebuttal witness. Defense counsel chose the former.

¶ 24    On September 22, 2022, the State filed a response to the motion for new trial requesting denial thereof. Following argument on September 23, 2022, the trial court denied the motion for new trial and then addressed defendant's sentencing. At that time the court stated, "If this case would have proceeded to trial without any statements that you made, either here at trial or the statements made to the police officers, I don't believe it would have been sufficient to find you guilty." The court further stated, "My belief is that this jury weighed the evidence and particularly your statements made to the Mattoon Police Department, and that was the overriding factor in

9

convincing them that you were guilty beyond a reasonable doubt." The trial court also addressed the underlying issue related to the motion to suppress defendant's statements. On this topic, the court stated, *inter alia*,

"With respect to your expert's opinion with respect to false confessions, I understand that concept. That was presented to this jury. They had an opportunity, just as I did, to listen to that evidence and to make a determination [about] what you said to the police ***. They could have believed that you said that just to make the police officers happy; that's what they wanted you to say; you said it under pressure; you said it under stress; you said it because of all the things that you have gone through in life, all the things that you believe from a value system. The evidence as properly presented to this jury and my belief is they rejected that. I will say that it is not easy to watch an interview that took place over that length of time where some of the tactics used by the Mattoon Police Department Officers were questionable, according to your expert. Clearly they made statements that weren't true about what the doctors were saying, particularly as it relates to an old bleed, but understand this, a jury trial[,] and a police investigation—and you know this because you were a state trooper—is all about trying to determine the truth, what really happened, and a lot of times in criminal cases there aren't eyewitnesses that are able to testify. *** So[,] I don't fault the Mattoon Police Department, but it's not comfortable to watch. It's not how we normally act in society. It's not how we normally expect police officers to act, that they would lie to someone, but it's an investigative tool that is used by officers to get to the truth and it's not illegal."

Thereafter, the court found there was sufficient evidence for the jury to determine whether defendant committed the crime alleged.

10

¶ 25   The trial court also addressed the minimum sentences required for the Class X felony. It stated, "If I had discretion in this case, I might very well find that a probation sentence would be appropriate. I understand the State's argument, but the evidence wasn't overwhelming in this case that you committed this offense. It could have gone either way." After stating that it would not have been surprised if the jury found defendant not guilty, the trial court sentenced defendant to "the minimum sentence of six years" with three years' supervised release "based upon the mandatory minimum," the minimal fine of $500, and ordered defendant to pay the mandatory fines, costs, fees, and assessment. Defendant timely appealed.

¶ 26                                II. ANALYSIS

¶ 27   Defendant raises three issues on appeal. The first claims defense counsel provided ineffective assistance due to his waiver of her right to an evidentiary hearing on the motion to suppress her statement. She also argues the trial court erred by striking a portion of her testimony and denying her motion for a *Frye* hearing. We start by addressing defendant's ineffective assistance of counsel claim.

¶ 28   Illinois relies on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to govern claims of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A] defendant must establish both prongs of the *Strickland*

11

test, such that the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 29    Defendant argues that trial counsel's failure to require a hearing on defendant's motion to suppress her police interview tapes was deficient lawyering that prejudiced her because defense counsel was well aware of the case law and statutes requiring an evidentiary hearing when a claim of voluntariness related to a confession was made because he cited the cases and the statute in his motion to exclude the confession. Yet, when the time came for the hearing, the State indicated that it could get its witnesses by the end of the week, defense counsel stated that his expert would not likely be available by that time, and therefore, he would "stand on his motion." Defendant argues that her counsel failed to realize the expert's testimony was key to getting the statements excluded, especially when the trial court misinterpreted defendant's expert opinion on the issue of voluntariness. She further argues that trial counsel's allowance for a ruling without a hearing on the issue of voluntariness fell below the objective standard of reasonableness. She also contends that she was prejudiced by counsel's lack of action because she was constitutionally entitled to a hearing on the voluntariness of her confession and, but for the inaction by her counsel, she would have had the hearing. She was further prejudiced because it is likely the outcome would have been different if the confession was excluded where even the trial court stated at sentencing that without her statements, there would have been insufficient evidence to convict her.

¶ 30    The State concedes the better practice would have been to have a full hearing but argues that defendant's expert report was before the trial court which detailed every aspect of the police interrogation. While conceding defense counsel's performance was not perfect, it argues that the performance was not deficient under *Strickland*. The remainder of the State's argument claims that prejudice cannot be shown because when the interrogation video is reviewed, it is clear that

12

defendant was properly Mirandized and was not coerced and therefore the trial court's ruling on the voluntariness of defendant's confession would not have changed. Therefore, it argues no prejudice can be shown.

¶ 31   Defendant's reply reasserts her arguments related to the suppression evidentiary hearing. She further claims the State incorrectly asserted that defendant was properly Mirandized. She argues that the officer's introduction to the process minimized its significance to defendant and when the *Miranda* warning was provided it was given at "breakneck" speed and was "almost indecipherable."[2]

¶ 32   In Illinois, in order to establish prejudice on a claim of ineffective counsel based on a motion to suppress, the "defendant must show a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005) (citing *People v. Orange*, 168 Ill. 2d 138, 153 (1995)). The State argues that the motion would not have been granted. However, we cannot be so sure based on the trial court's comments both at the pretrial hearing and during sentencing. At the initial hearing, in which defense counsel essentially waived defendant's right to an evidentiary hearing (see *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *People v. Fultz*, 32 Ill. App. 3d 317, 332 (1975)), the trial court twice misinterpreted the crux of the report prepared by Dr. Robert Stanulis.

¶ 33   The court's first misinterpretation stemmed from its finding that Dr. Stanulis was correct in stating the issue of voluntariness should be left to the jury. "Illinois has long held that, where

---

[2]This issue was never raised before the trial court. Nor was the issue raised in defendant's initial brief. " 'It is well settled that issues raised for the first time in the appellant's reply brief shall be deemed waived on appeal.' " *People v. Sykes*, 2022 IL App (5th) 200204-U, ¶ 14 (quoting *People v. Brownell*, 123 Ill. App. 3d 307, 319 (1984)). Accordingly, we find the issue forfeited.

the competency *i.e.*, admissibility of a confession is timely put at issue, that issue must first be determined by the trial judge before the admission of the confession into evidence, and that issue can never be left to the jury which is adjudicating the guilt or innocence of the defendant, because that issue is one of law and not of fact." *Fultz*, 32 Ill. App. 3d at 332 (citing *People v. Fox*, 319 Ill. 606, 618 (1925); *People v. Roach*, 369 Ill. 95, 96-97 (1938); *People v. Wagoner*, 8 Ill. 2d 188, 196 (1956)). This principle is also codified. See 725 ILCS 5/114-11(c) (West 2022). During these hearings, the burden of proof rests with the State to show that "the confession was voluntary by a preponderance of the evidence." *People v. Slater*, 228 Ill. 2d 137, 149 (2008) (citing 725 ILCS 5/114-11(d) (West 2002); *People v. Braggs*, 209 Ill. 2d 492, 505 (2003)).

¶ 34 The trial court's second misinterpretation claimed that Dr. Stanulis failed to reach any conclusion as to whether defendant's statement to the Mattoon Police Department was involuntary. However, Dr. Stanulis's report concluded by stating, "Overall, from a psychological perspective, there is abundant evidence of coercion in the interrogation of Ms. Petak is more than sufficient in the totality of circumstances to result in her will being overborn and in her statement therefore being involuntary. In addition, there is abundant evidence of a false admission and confession." Given the trial court's misperception of Dr. Stanulis's report, we cannot accept the State's claim that the outcome of an evidentiary hearing, in which Dr. Stanulis testified as to his conclusions regarding defendant's statement, would not have been different.

¶ 35 Further evidence supporting this conclusion stems from the trial court's statements at the sentencing hearing. While it ultimately found the police tactics were not illegal, and again erroneously stated that determination of the voluntariness of defendant's statement was properly placed before the jury, the trial court twice addressed its difficulty in watching defendant's police interview, going so far as to state it was "not comfortable to watch." We note that no such comment

14

was made when the trial court watched the video for the first time at the final pretrial hearing when it was addressing the issue of whether the officers ignored defendant's alleged invocation of her right to counsel. The court's comments came only after the trial court was privy to Dr. Stanulis's testimony as to why the expert believed defendant's statement to the police was involuntary. Based on this evidence, we find that a reasonable probability exists that the motion to suppress the statements would have been granted. Accordingly, defendant has proved the first prong of the motion to suppress analysis.

¶ 36　To establish prejudice, defendant must also show that the outcome of the trial would have been different had the evidence been suppressed. Once again, we consider the trial court's statements at sentencing. At that time, the court stated, "If this case would have proceeded to trial without any statements that you made, either here at trial or the statements made to the police officers, I don't believe it would have been sufficient to find you guilty." The trial court also stated, "My belief is this jury weighed the evidence, and particularly your statements made to the Mattoon Police Department, and that was the overriding factor in convincing them that you were guilty beyond a reasonable doubt." Additional statements by the trial court also reveal the closeness of the evidence. More specifically, the court stated that the "evidence wasn't overwhelming" that defendant committed the offense, the case "could have gone either way," and that it would not have been surprised if the jury "found you not guilty." Our review of the evidence yields no contrary conclusion and therefore we find the outcome of the proceeding would have been different if defendant's statements had been suppressed. Accordingly, we find defendant has also proved prejudice and agree that her trial counsel provided ineffective assistance.

¶ 37　"Where a defendant has been denied a complete and fair hearing on his motion to suppress his confession, a court of review may either remand the case for an entirely new trial or remand

15

the case solely for a new full and complete hearing on the admissibility of the confession." *In re J.C.*, 69 Ill. App. 3d 289, 292 (1979). We examine these options in conjunction with case law finding ineffective assistance of counsel and the effect of prejudicial trials.

¶ 38    Where a defendant is deprived of effective assistance of counsel, the proper remedy is to reverse the defendant's conviction and remand for a new trial. *People v. Young*, 306 Ill. App. 3d 350, 356 (1999); see also *People v. Watson*, 2012 IL App (2d) 091328, ¶ 37. Similarly, where prejudicial error infects a verdict, a defendant is entitled to a new trial even in such instances where the evidence was sufficient to uphold the conviction. *People v. Graham*, 179 Ill. App. 3d 496, 509 (1989). "Where guilt or innocence depends entirely on the credibility of an accuser and the defendant, no error should be permitted to intervene." *People v. Emerson*, 97 Ill. 2d 487, 502 (1983). " 'Where error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial.' " *Id.* (quoting *Duffy v. Cortesi*, 2 Ill. 2d 511, 517 (1954)).

¶ 39    Here, the record unequivocally shows that the constitutional errors, stemming from the failure to hold an evidentiary hearing on the motion to suppress and the ineffectiveness of counsel related thereto, were shown. Further, no serious argument can be made that said errors were not prejudicial. Accordingly, we vacate the trial court's judgment of conviction and sentence and remand the case back to the trial court for a new trial.

¶ 40    "Because we are remanding this case for a new trial, we will consider briefly whether the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt." *People v. Porter*, 168 Ill. 2d 201, 215 (1995). Upon review of the evidence, we find it was sufficient to support the guilty verdict and therefore find no impediment to a new trial. See *People v. Hope*, 116 Ill. 2d 265, 279 (1986). However, we in no way imply that we have made a finding as to the

defendant's guilt that would be binding on the trial court on retrial. *People v. McDonald*, 125 Ill. 2d 182, 202 (1988).

¶ 41    Due to the above ruling, we find defendant's second argument, related to the trial court's ultimatum forcing defense counsel to choose between allowing rebuttal testimony or striking his client's testimony as to the DCFS agent's statement, moot. However, because the case is being remanded for a new trial, and the issue will likely arise again on remand, we briefly address defendant's third argument related to the denial of her motion for a *Frye* hearing.

¶ 42    "In Illinois, scientific evidence is admissible at trial only if it meets the standard expressed in *Frye*, which dictates that 'scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs." ' " *People v. McKown*, 226 Ill. 2d 245, 254 (2007) (quoting *In re Commitment of Simons*, 213 Ill. 2d 523, 529-30 (2004), quoting *Frye*, 293 F. at 1014). "A court may determine the general acceptance of a scientific principle or methodology in either of two ways: (1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject." *Id.* A reviewing court's consideration of this issue is *de novo*. *Id.*

¶ 43    As noted above, in issuing its decision denying defendant's motion for a *Frye* hearing, the trial court took judicial notice of prior judicial decisions in Illinois addressing similar issues. Such is a proper basis to determine the general acceptance of a scientific principle. *Id.* "However, courts must exercise caution when relying on prior judicial decisions." *People v. Mann*, 397 Ill. App. 3d 767, 768 (2010). " ' "Unless the question of general acceptance has been thoroughly and thoughtfully litigated in the previous cases, *** reliance on judicial practice is a hollow ritual." ' "

17

*Id.* (quoting *People v. Kirk*, 289 Ill. App. 3d 326, 333 (1997), quoting 1 J. Strong, McCormick on Evidence § 203, at 870 n.20 (4th ed. 1992)).

¶ 44 While the cases considered by the trial court included claims of shaken baby syndrome, they did not provide a *Frye* hearing on the issue. See *People v. Armstrong*, 395 Ill. App. 3d 606, 626 (2009) (trial court took judicial notice of prior cases as general acceptance); *People v. Glucksmann*, 2019 IL App (2d) 170515-U, ¶ 93 (experts did not rely on shaken baby syndrome methodology and therefore *Frye* did not apply); *People v. Schuit*, 2016 IL App (1st) 150312, ¶ 96 (same); *People v. Petrie*, 2021 IL App (2d) 190213, ¶ 73 (expert relied on shaken baby syndrome but reliance was not challenged). We further note that both parties conceded during oral argument that a *Frye* hearing has never been held in Illinois addressing shaken baby syndrome. Nor has a *Frye* hearing, as more specifically addressed by defendant, been held addressing whether the alleged link between traumatic abuse and reticular hemorrhaging was sufficiently established to have resulted in general acceptance in the particular field in which it belongs.

¶ 45 On review, appellate courts are not restrained from considering opinions from other jurisdictions. *People v. Fountain*, 2016 IL App (1st) 131474, ¶ 57; *In re Commitment of Simons*, 213 Ill. 2d at 531; *McKown*, 226 Ill. 2d at 259. Our review reveals that other jurisdictions have expressed concern with the underlying principle. See *Cavazos v. Smith*, 565 U.S. 1, 13-14 (2011) (Ginsberg, J., dissenting); *Del Prete v. Thompson*, 10 F. Supp. 3d 907, 955-57 (N.D. Ill. 2014); *People v. Bailey*, 999 N.Y.S.2d 713 (County Ct. 2014); *State v. Edmunds*, 308 Wis. 2d 374 (Ct. App. 2008). Here, in addition to conflicting decisions seen in the case law, defense counsel also submitted countervailing views on the issue published in a medical journal in 2009 and two of the experts conceded at trial that a controversy existed as to the link between retinal hemorrhages and traumatic abuse.

¶ 46 As noted above, "A court may determine the general acceptance of a scientific principle or methodology in either of two ways: (1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject." *McKown*, 226 Ill. 2d at 254. We find that neither the judicial decisions nor the technical writings on the topic of either shaken baby syndrome, or the link between retinal hemorrhage and trauma, are unequivocal or undisputed, and the testimony by the experts at the hearing further confirms our finding. As such, we find it was error for the trial court to deny defendant's motion for a *Frye* hearing.

¶ 47                               III. CONCLUSION

¶ 48 For the foregoing reasons, we vacate the trial court's judgment and sentence and remand for a new trial.


¶ 49 Vacated and remanded.