THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN ATWOOD, Defendant-Appellant.

Fourth District   No. 4—88—0693

Opinion filed January 25, 1990.—Rehearing denied February 27, 1990.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Norbert J. Goetten, State's Attorney, of Carrollton (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On August 2, 1988, following a jury trial in the circuit court of Greene County, defendant Melvin Atwood was convicted of various drug offenses, including: three counts of unlawful delivery of cannabis, one count of unlawful possession of cannabis, five counts of unlawful delivery of a controlled substance, and one count of unlawful possession of a controlled substance. He was subsequently sentenced to two, consecutive seven-year terms of imprisonment for two convictions of delivery of a controlled substance containing cocaine. Lesser terms of imprisonment were imposed for the other convictions and were ordered to run concurrently with the first seven-year term of imprisonment. A fine, costs, reimbursement to the county for defendant's use of court-appointed defense counsel, and a lien against defendant's real and personal property were also ordered.

Defendant appeals, contending the court erred (1) in refusing to suppress evidence seized pursuant to a search warrant; (2) in ordering him to reimburse Greene County for the services of appointed defense counsel; (3) in sentencing him; and (4) in failing to give him sufficient credit upon his sentence for time he had spent in custody. We affirm the convictions but reverse the sentences and the order for reimbursement to the county. We remand for resentencing and for a new hearing in regard to reimbursement. In regard to credit for time spent in custody, the State agrees that upon any remand, the defendant is entitled to credit for 197 days against his sentence of imprisonment and $985 credit against his fines. We so order.

As defendant does not dispute the sufficiency of the evidence at trial to support the verdicts, we need discuss that evidence only briefly.

Joe Gromelski, a paid informant, testified in great detail to purchases he had made from defendant of marijuana and certain narcotic drugs on the dates alleged in the various counts of the information filed against defendant. This testimony was corroborated, also in great detail, by that of police officers who had also been involved (1) in setting up the purchases; (2) in searching Gromelski and his vehicle before he left to make the purchases; and (3) in following him to defendant's home. Gromelski and the officers testified to a total of six purchases made between December 1987 and February 29, 1988.

Deputy sheriff Rick Snyder testified at trial that, after Gromelski had made a purchase from defendant on February 29, 1988, Snyder

obtained a search warrant giving him the authority to search defendant's residence and vehicles and anyone on the premises. He said the other officer making the search discovered $240 in currency, which had serial numbers that matched currency given to Gromelski prior to making a purchase of narcotics earlier that evening.

Defendant called a number of witnesses whose testimony was substantially similar in that they stated they had never seen defendant sell or give narcotics or cannabis to Gromelski on February 29, 1988, or at any other time.

Defendant testified that (1) defendant was purchasing the house in which he was residing; (2) Gromelski owed defendant money for rent when Gromelski stayed with defendant and for money defendant had loaned Gromelski; (3) Gromelski paid him $270 on that debt on February 29, 1988, the night he was arrested; (4) he did not sell drugs to Gromelski that evening or any of the other dates alleged in the information; (5) he had never sold drugs or given drugs of any kind to Gromelski; (6) he purchased cocaine and methamphetamines from Gromelski several times after November 1987; and (7) on February 29, 1988, he and Gromelski used Gromelski's cocaine, but defendant did not possess cocaine, methamphetamine or cannabis that evening.

In rebuttal, the State introduced into evidence a tape recording of a conversation allegedly held between defendant and Gromelski on February 29, 1988. The tape recording, which resulted from a hidden taping device on Gromelski, was played to the jury for the purpose of impeaching defendant's trial testimony. In addition, the court cautioned the jury that the tape was being used for the limited purpose of determining defendant's credibility and the believability of the defendant and the informant.

The record concerning the issuance of the search warrant is most unusual. At a time which is uncertain, defendant, acting *pro se*, filed a motion to quash the previously mentioned search warrant and to suppress the money seized. This motion is not in the record. Subsequently, this motion was replaced by a motion by court-appointed counsel. This motion was considered by the trial judge after the jury had been selected and sworn but before opening statements. The trial judge had also been the judge who issued the warrant. The judge indicated he was going to deny the motion and then did so. Defense counsel did not attempt to offer any evidence or make any objection to the procedure.

We consider first the ruling on the motion to suppress. Defendant maintains the circuit court erred in this respect (1) by failing to hold an evidentiary hearing on the motion; (2) by taking judicial notice of the transcript of the testimony presented at an *ex parte* hearing on the

petition for the search warrant, pursuant to which the questioned evidence was seized; and (3) by failing to state its findings of fact and conclusions of law in the order denying suppression.

Section 108—3(a) of the Code of Criminal Procedure of 1963 (Code) provides for courts to issue search warrants "upon the *written complaint of any person under oath or affirmation* which states facts sufficient to show probable cause." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 108—3(a).) The record does not contain the complaint or any supporting affidavits upon which the warrant was issued. The record does contain a report of proceedings which contains testimony of Deputy Snyder, who was apparently the complainant. This testimony was taken by the court upon presentation of the complaint for a search warrant. For reasons we will explain, we need not consider whether, under Illinois law, such a transcript can be the basis for the issuance of a search warrant. See *People v. Elias* (1925), 316 Ill. 376, 147 N.E. 472; W. LaFave, Search & Seizure §4.3(b), at 171-74 (2d ed. 1987).

Section 114—12(b) of the Code provides that when a written motion to suppress has been filed stating "facts showing wherein [a] search and seizure [has been] unlawful[,] [the] judge shall receive evidence on *any issue of fact* necessary to determine the motion." (Emphasis added.) (Ill. Rev. Stat. 1963, ch. 38, par. 114—12(b).) Here, defendant's motion to suppress did not challenge the manner in which the warrant was executed, but contended the warrant was issued without a showing of probable cause. Ordinarily the question of whether probable cause was shown for the issuance of a search warrant must be determined upon the basis of the verified allegations of the complaint for the issuance of the warrant or supporting documents. (*People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341.) However, under the holding in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, in seeking to suppress evidence seized under a search warrant, a defendant may challenge the propriety of the issuance of the warrant by presenting evidence that the warrant was obtained by false statements made knowingly and intentionally or with reckless disregard for the truth. See also *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269.

Here, the closest assertion of the motion to suppress to invoke the *Franks* doctrine was a statement that an allegation of the complaint for warrant contending defendant was a convicted felon was falsely made "with negligent regard for the accuracy of the allegation, when a single check of the records maintained in the Greene County sheriff's office would have revealed the true status of the defendant's criminal history." We do not deem that statement to charge the com-

plainant with knowing or intentional falsehood or reckless disregard of the truth. Accordingly, the circuit court was not required to hold an evidentiary hearing.

We note that the failure to hold an evidentiary hearing might also be justified upon the basis the defense did not request any such hearing, voiced no objection to proceeding without such a hearing, and made no offer of proof of evidence which would be presented at such a hearing. We also note that the question of whether defendant was a convicted felon had little bearing upon the question of whether probable cause existed for the issuance of the search warrant.

■■ While we do not decide whether a search warrant may be issued in Illinois upon the basis of testimony under oath taken before a judge and transcribed in a report of proceedings, we are satisfied no error resulted here from any consideration the court gave to such a transcript. The record clearly shows that a complaint was presented to the judge who issued the warrant, but that complaint has not been made a part of the record on appeal. As we have indicated, absent the applicability of *Franks*, the determination of whether probable cause existed for the issuance of the warrant depends upon the allegations of that complaint. (*Bak*, 45 Ill. 2d 140, 258 N.E.2d 341.) If the complaint properly set forth probable cause, any consideration to the issuing judge of outside information would not invalidate the warrant. *People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307.

■■ ■ Generally, the failure of an appellant to supply a portion of the record of the proceedings in the trial court creates a presumption on review that the missing record would support the trial court's order. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.) This rule is applicable to deficiencies in the common law record as well as to deficiencies in the report of proceedings. (*Fischer v. Mann* (1987), 161 Ill. App. 3d 424, 514 N.E.2d 566.) We hold we may assume the complaint upon which the warrant was issued properly set forth probable cause. Defendant does not argue to the contrary.

■■ Defendant correctly points out that section 114—12(e) of the Code states "[t]he order or judgment granting or denying the motion [to suppress evidence illegally seized] shall state the findings of facts and conclusions of law upon which the order or judgment is based." (Ill. Rev. Stat. 1987, ch. 38, par. 114—12(e).) Here, the record shows the court made no such findings or conclusions in its order denying the motion to suppress. Defendant maintains this was reversible error. In *People v. Winters* (1983), 97 Ill. 2d 151, 454 N.E.2d 299, the supreme court held failure to make such findings or conclusions of law in an order denying a motion to suppress evidence seized without a warrant

was not reversible error, because a presumption arose that the trial court credited only testimony supporting its decision. Defendant contends that rule is not applicable here, because no evidence was presented upon the motion to suppress. However, we have held no evidence was either appropriate or necessary at the hearing on the motion to suppress. Thus, only conclusions of law were involved here, and they were also involved in *Winters*, but their absence did not require reversal. While, as stated in *Winters*, orders of suppression or denial of suppression should conform to section 114—12(e), the failure here does not require reversal.

■■ On the basis of the record presented, we conclude the circuit court did commit reversible error in requiring defendant to reimburse Greene County in the sum of $5,000 for the services of the counsel appointed to represent defendant. A somewhat detailed discussion is necessary to explain our ruling.

Section 113—3 of the Code provides for the appointment of counsel by the court for indigent defendants, and subsection 113—3(c) provides for a procedure whereby a fee to be paid by the county to "counsel other than the Public Defender" shall be determined. (Ill. Rev. Stat. 1987, ch. 38, par. 113—3(c).) The record here indicates that throughout most of the pretrial proceedings defendant was represented by a court-appointed attorney, and the record gives no indication that attorney was a public defender. The record also does not disclose whether that attorney had sought payment from Greene County for his services at the time the reimbursement order was entered, but he would not likely have done so as the reimbursement order was entered at sentencing.

Section 113—3.1(a) of the Code sets forth a procedure whereby whenever counsel is appointed under section 113—3 of the Code to represent an accused in the trial court or under Supreme Court Rule 607(a) (107 Ill. 2d R. 607(a)) to represent such a person on appeal, "the court may order the defendant to pay" a "reasonable" sum to reimburse the county or the State for such services. (Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(a).) For a felony, the amount which can be awarded the government cannot exceed $5,000 for representation in the trial court. (Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(b).) This was the statutory provision under which the court acted in entering the $5,000 reimbursement order. In *People v. Brown* (1987), 154 Ill. App. 3d 692, 506 N.E.2d 1059, the court held that regardless of whether the services for which reimbursement from the defendant is sought are those rendered by a public defender or by private, appointed counsel, the standards upon which the decision is to be based are those applicable, under section 113—3(c), to a private counsel seeking reimburse-

ment from a county for services rendered pursuant to court appointment. Section 113—3(c) states when such compensation is sought:

"The court shall consider all relevant circumstances, including but not limited to the time spent while court is in session, other time spent in representing the defendant, and expenses reasonably incurred by counsel." Ill. Rev. Stat. 1987, ch. 38, par. 113—3(c).

In this case, the order to reimburse the county in the sum of $5,000 was imposed upon the defendant at the conclusion of the sentencing. The record gives no indication the defendant or his counsel was given any forewarning. After the court had pronounced the order, the defendant said nothing, and his counsel stated he would be filing a notice of appeal but made no reference to the reimbursement order. The only evidence of the reimbursement order appears in the report of proceedings. The common law record gives no indication any reimbursement for services of counsel was ever ordered. Section 113—3(b) of the Code states that when a defendant seeks appointed counsel, "[t]he court shall require an affidavit signed by" that defendant to be filed, and that affidavit shall contain "sufficient information to ascertain the assets and liabilities of that defendant." (Ill. Rev. Stat. 1987, ch. 38, par. 113—3(b).) Section 113—3.1(a) of the Code requires the court, in considering reimbursement to be ordered, to consider that affidavit and other information submitted "pertaining to the defendant's financial circumstances." (Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(a).) No such affidavit was ever obtained from defendant here.

Section 113—3.1(a) of the Code provides for a reimbursement hearing to be "conducted on the court's own motion or on motion of the State's Attorney at any time after appointment of counsel" but no later than 90 days after the court's final order in the case. (Ill. Rev. Stat. 1987, ch. 38, par. 113—3.1(a).) We do not interpret that provision to authorize the court *sua sponte* to pronounce a reimbursement order, as apparently done here, without warning to the defense and without the defense having an opportunity to present information which might bear upon the question involved.

From the record before it, the court had the following information which would bear on the amount which might be properly assessed for the services rendered: (1) at the time when defendant requested release on bail bond before trial, defendant presented an appraisal indicating he owned a dwelling of a value of $21,000; (2) the presentence investigation report indicated defendant was living on some sort of disability benefits and owed $5,000 to $6,000 on a debt secured by a lien on his dwelling; (3) defendant was required to pay that debt at a rate

of $90 per month; (4) defendant testified at trial he had more than enough money to live on and had lent money to others; (5) the trial had taken three days, and defense counsel had also appeared at sentencing, had made pretrial motions for continuance, reduction of bond, and for speedy trial and had appeared at a bond-reduction hearing. The court-appointed attorney had not filed any affidavit as to the time spent working on the case. A reimbursement order in the sum of $5,000 may be proper here. However, defendant was fined $20,000 and the money he testified to at trial may have been money from drug transactions which he will no longer have. More importantly, the maximum award of $5,000 in fee reimbursement may be more than justified depending upon the time spent by defense counsel.

■ The State maintains any error was waived, because no complaint concerning the reimbursement order was made in the trial court, and the issue is being raised for the first time on appeal. When error in the determination of a section 113—3.1 reimbursement order has been raised for the first time on appeal, this court held the question to have been waived in *People v. Nash* (1989), 183 Ill. App. 3d 924, 539 N.E.2d 822, *People v. Van Ostran* (1988), 168 Ill. App. 3d 517, 522 N.E.2d 851, and *People v. Cozad* (1987), 158 Ill. App. 3d 664, 511 N.E.2d 211, *cert. denied* (1988), 485 U.S. 964, 99 L. Ed. 2d 432, 108 S. Ct. 1233. We deem each case to be significantly different than the case before us and reject the State's request that waiver be applied here.

The record in *Nash* showed the court had carefully applied a fair procedure. At arraignment, the court informed the defendant he would be assessed a fee of $1,000, to be paid at the rate of $25 per month, for the services of a court-appointed salaried public defender. At the conclusion of the case the court gave further consideration to the recoupment order and concluded it was proper. Prior to the reconsideration, the court had offered the defendant an opportunity to present evidence on the recoupment question, and the defendant chose not to do so. In regard to the defendant's ability to pay, the record showed defendant had been placed on probation subject to various conditions, which included a short period of imprisonment and a requirement to pay restitution not to exceed $1,800 for therapy for the victim. The sum of $300 from defendant's bond deposit was available toward that obligation. Thus, the defendant was not burdened with large obligations, would soon be free and able to make the modest payment required. The opinion gives no indication the defendant had not been required to furnish the financial affidavit described in sections 113—3(b) and 113—3.1(a) of the Code. Thus, the court had complete information supporting the defendant's ability to make reimbursement. The public

defender had filed an affidavit showing the expenditure of 10 hours on the case. Accordingly, the court also had information justifying the amount of the reimbursement on the basis of work performed.

In *Van Ostran*, a defendant was ordered to reimburse a county furnishing him legal services the sum of $50. Court-appointed counsel represented the defendant in plea proceedings and at sentencing. The amount of the reimbursement was obviously not excessive for the services rendered, and the record showed the defendant had made a bond deposit in the sum of $1,000 from which the $50 could be drawn. In *Cozad*, the court also imposed the reimbursement order at the time of arraignment. At that time, the court had the required affidavit before it. The defendant then entered a plea of guilty, was placed on probation, was later charged with violation of that probation, had his probation revoked at a subsequent hearing and was sentenced to imprisonment after his probation was revoked. He attempted to raise the issue of the original reimbursement order on the appeal from the revocation and sentence of imprisonment. The prime basis of the waiver there was that the determination of the reimbursement required became *res judicata* when no appeal was taken after the sentence to probation. (*People v. Stueve* (1977), 66 Ill. 2d 174, 361 N.E.2d 579.) Citing *People v. Hammer* (1983), 121 Ill. App. 3d 133, 459 N.E.2d 1, the court also indicated waiver would apply because of failure to raise the issue of the propriety of the reimbursement order in the trial court.

We deem two other aspects of the instant case to be highly significant. One concerns a situation here somewhat analogous to that in *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138. There, in pronouncing sentence, the court recited that it gave consideration to an improper aggravating factor. The defense did not respond to that in any way until improper consideration was cited as error on appeal. The supreme court held the issue was not waived. Justice Ryan, speaking for a unanimous court, wrote:

> "To preserve any error of the court made [when pronouncing sentence], it was not necessary for counsel *to interrupt the judge and point out that he was considering wrong factors* in aggravation, especially in light of the argument that had preceded the ruling." (Emphasis added.) (*Saldivar*, 113 Ill. 2d at 266, 497 N.E.2d at 1142.)

Prior to the statement by the sentencing judge, counsel for the State and defense had presented arguments as to the proper aggravating and mitigating factors.

Here, the record does not indicate the defense was aware of any issue of reimbursement until the court *sua sponte* ordered reimburse-

ment. Thus, defense counsel had no opportunity to make any kind of an objection to the procedure of the court until the court made its pronouncement. Here, as in *Saldivar*, defense counsel could have made some objection after the court completed the pronouncement of its order, but did not do so. Here, as in *Saldivar*, the defense could have filed some post-judgment motion setting forth the error in the ruling but did not do so. The *Saldivar* court did not require either objection or motion to preserve error, and we should not do so here.

The other significant aspect of this case was that the court-appointed counsel apparently was not a salaried public defender but a private attorney to be paid under the provisions of section 113—3 of the Code. Under our holding in *Brown*, the same factors would be used to determine defense counsel's compensation as should have been used to determine the amount of reimbursement by defendant to be ordered pursuant to section 113—3.1, except that the ability of the defendant to pay is not a factor under section 113—3. Thus, under these circumstances the two determinations are closely intertwined.

In *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157, the court determined the representation by attorneys in the same public defender's office of two persons accused of crime and having conflicting interests did not necessarily create a conflict of interest. The court pointed out that " 'the innate competitive instincts of an advocate and the integrity of the bar ***' ABA Standards, The Defense Function. Commentary, at 212-13 (1971)" was a substantial protection to the defendants involved. (*Robinson*, 79 Ill. 2d at 159, 402 N.E.2d at 163.) We fully agree with those sentiments. However, if here defense counsel was required, in order to preserve error, to take some step in the trial court to point out such error, we are most reluctant to impose a waiver when that counsel appears so likely to have a personal interest in the amount of reimbursement ordered.

Our concern with the relationship between the private counsel's compensation and the amount of reimbursement does not rise from any belief defense counsel here refrained from taking any step in order to protect his remuneration. Most likely he did not take steps the State would deem necessary to preserve error because he was so surprised by the judge's ruling or because, consistent with *Saldivar*, he did not deem any such action necessary. Nevertheless, the procedures used here to impose a reimbursement order on defendant were erroneous and that error was not waived.

■■ Appointment of other counsel to represent a defendant in a reimbursement proceeding is neither necessary, desirable, nor practical. However, because of the relationship between the reimbursement

to the county and the fees that are to be awarded to the lawyer, a burden is placed upon the court and the prosecutor to see that a proper record is made to support the reimbursement order. This is particularly important, where, as apparently was the case here, the attorney is in private practice and will receive a fee fixed by the court pursuant to section 113—3 of the Code. Such a record should show that the defendant had (1) notice of the request for reimbursement; (2) an opportunity to present evidence and to otherwise be heard; (3) the ability to pay the amount ordered; and (4) that amount was not unreasonably high for the services rendered. Only then should the question of failure to preserve issues for review be considered.

The errors in sentencing arose from the trial court's violation of the rule of *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, which prohibits the sentencing court from considering, as aggravating factors, those factors which are inherent in the offense. The court considered among the aggravating factors that the defendant received compensation for committing the offenses involving delivery of the various contraband substances. In *People v. Harrison* (1987), 156 Ill. App. 3d 39, 508 N.E.2d 1226, *People v. Garrett* (1987), 152 Ill. App. 3d 212, 504 N.E.2d 237, and *People v. Joy* (1986), 150 Ill. App. 3d 310, 501 N.E.2d 1325, the Second, Third, and Fifth Districts of the Appellate Court, respectively, have held that compensation for delivery of a controlled substance or cannabis cannot be used as an aggravating factor for the offense of delivering those substances.

The *Conover* court pointed out that in providing for the receipt of "compensation for committing the offense" (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(2)) as an aggravating factor to be used in sentencing, the General Assembly did not intend to include, as compensation, that which the offender received as the proceeds of the offense but, rather, that which another gave the offender for the commission of the offense. (*Conover*, 84 Ill. 2d at 404, 419 N.E.2d at 908.) The decisions from the three other districts of the appellate court have applied the same theory to the offenses for delivery of the contraband substances involved here, treating the money received as inherent in the offense and as the proceeds thereof. We agree. We cannot determine the consideration given by the court to this factor was insignificant. We find consideration of the compensation received as an aggravating factor was error.

Defendant also maintains the court erred in considering the harm caused by defendant's conduct as an aggravating factor. In *People v. Maxwell* (1988), 167 Ill. App. 3d 849, 522 N.E.2d 288, the court deemed the harm caused by delivery of controlled substances to be in-

herent in the offense. Nothing in the record here indicates the conduct of this defendant had any more propensity to cause harm than that which was inherent in the offense. (*People v. Ehrich* (1988), 165 Ill. App. 3d 1060, 519 N.E.2d 1137.) Accordingly, we hold consideration of this factor in aggravation of defendant's conduct was also error.

The State points out that the issue of improper consideration of aggravating factors was raised by defendant for the first time on appeal. However, as we have explained, the *Saldivar* court held that the defense is not required to object to the inclusion of improper factors being taken into consideration while the court is pronouncing sentence. (See *People v. Martin* (1988), 119 Ill. 2d 453, 519 N.E.2d 884.) For this reason, and because of the importance of proper consideration of these factors to a defendant, the court held the issue not to have been waived. We so hold here.

The State concedes defendant was improperly sentenced on count X (unlawful possession of a controlled substance) to five years' imprisonment for a Class 4 felony, the maximum incarceration for which is three years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(7).) The State also concedes the defendant is entitled to sentence credit for 197 days which he spent while incarcerated for this offense as well as $985 as credit against his fines.

As the errors we have cited concern most of the sentences and the sentences are interrelated, we deem it necessary to have resentencing as to all convictions. Accordingly, we affirm all convictions and reverse all sentences. We also reverse the judgment for reimbursement and imposing a lien therefore. We remand to the circuit court of Greene County for new hearings as to sentencing and reimbursement. All sentences imposed shall be consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

KNECHT, P.J., and LUND, J., concur.