2025 IL App (1st) 241549-U

No. 1-24-1549

Order filed June 30, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 13382 |
| | ) | |
| JOHNNY LAKES, | ) | Honorable |
| | ) | Joseph M. Claps and |
| Defendant-Appellant. | ) | Pamela J. Stratigakis, |
| | ) | Judges, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*: We reverse defendant's convictions and remand for an evidentiary hearing on his motion to suppress evidence. We retain jurisdiction to decide any remaining issues after the evidentiary hearing.

¶ 2     Following a bench trial, the trial court found defendant Johnny Lakes guilty of identity theft, financial institution fraud, and loan fraud. The court sentenced defendant to four years in prison. On appeal, defendant contends that the trial court should have held an evidentiary hearing

on his motion to suppress evidence police recovered during a search of an apartment in which he lived. Defendant also argues that trial counsel rendered ineffective assistance by failing to seek such an evidentiary hearing and by failing to develop this issue in his motion for a new trial. For the following reasons, we reverse and remand for an evidentiary hearing on defendant's motion to suppress. We retain jurisdiction to decide any remaining issues after the evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4                          A. Investigation, Arrest, and Charging

¶ 5      On November 16, 2016, Oak Park detective Michael O'Connor filed a complaint for a warrant authorizing the search of "[t]he entire first floor apartment located at 801 South Euclid Avenue, Apartment 1A, Oak Park," as well as the seizure of electronic devices and other evidence of identity theft in the apartment. O'Connor attached his affidavit, which attested as follows.

¶ 6      On November 11, 2016, Carol Dawe informed Oak Park police that someone made an unauthorized purchase of $574.65 in furniture using her credit card. O'Connor was assigned to investigate. He learned from the furniture company, Divine Consign, that a man named Chase Cooke ordered the furniture via telephone, paid with Dawe's credit card number, and scheduled delivery to 807 South Euclid Avenue for November 15, 2016. At approximately 8:55 a.m. on November 15, 2016, O'Connor went to that address, which was a multi-unit apartment building that included addresses between 801 and 811 South Euclid. Posing as deliveryman "Mike from Divine Consign," O'Connor met a man who identified himself as Chase Cooke. Cooke asked to meet at the intersection of Euclid and Van Buren at noon to receive the furniture and O'Connor agreed.

¶ 7    At approximately 12:26 p.m., O'Connor called Cooke and said he was approaching Euclid and Van Buren. Cooke responded that someone would meet O'Connor there. When O'Connor arrived, he saw defendant standing outside the apartment building, holding an exterior door open and waving to him. O'Connor parked his delivery van, exited, and told defendant that Cooke needed to inspect the furniture. Defendant asked O'Connor to wait and entered the apartment building, then returned approximately 30 seconds later and said that he was Chase Cooke. Defendant confirmed that he ordered the furniture in the van and signed an invoice bearing Dawe's credit card number. Defendant told O'Connor that he lived in the first-floor apartment, offered to help unload the furniture, and said that he may need help assembling it.

¶ 8    Detective Tim Unzicker arrived and detained defendant outside the apartment building. Defendant told Unzicker that his real name was John Lakes and he lived on the 300 block of North Lotus Avenue in Chicago. Defendant said he did not live at the apartment building on Euclid in Oak Park and did not know who did. Unzicker searched defendant and recovered a set of keys, which defendant claimed were not related to the apartment building on Euclid. However, Unzicker used one of the keys to open the exterior door that defendant had been holding open when O'Connor arrived. Another key belonged to the mailbox for 801 South Euclid, apartment 1A; that mailbox was labeled "Taylor." A building manager named Irdiz Feratovic told Unzicker that he did not recognize defendant and confirmed that a James Taylor recently moved into apartment 1A.

¶ 9    According to O'Connor's affidavit, Unzicker "observed that the rear door to the first-floor apartment was open and accessible to anyone." Feratovic "requested that Detective Unzicker walk through the apartment with him to ensure that a burglary or crime had not occurred." Unzicker, O'Connor, and Feratovic walked through the apartment and confirmed that no one was inside.

While inside the apartment, O'Connor called "Chase Cooke's" phone number and an iPhone in the bedroom rang. O'Connor also saw AT&T bills and a laptop in the apartment. The detectives secured the apartment's rear door and left.

¶ 10    Unzicker obtained a copy of the lease for apartment 1A from the property management company. "James Taylor" signed the lease as the tenant on October 18, 2016. Taylor's phone number on the rental application was the same as the number defendant used to buy furniture as "Chase Cooke." In addition, the rental application included "James Taylor's" driver's license, which had defendant's photograph. A search of an Illinois Secretary of State database revealed that no such driver's license number existed. On November 16, 2016, a property management company employee identified defendant in a photo array as "the subject who rented apartment 1A of 801 S. Euclid under the name of James Taylor and presented a fraudulent driver's license and information to rent the apartment." O'Connor's affidavit concluded at this point.

¶ 11    O'Connor filed the complaint for a search warrant, including the affidavit set out above, on November 16, 2016. The court issued the search warrant and police executed it the same day. From apartment 1A, police recovered (1) two iPhones, (2) a package addressed to defendant containing blank payroll checks and holograms for driver's licenses, (3) paperwork for a vehicle registered to defendant, (4) a Microsoft Surface Pro tablet computer, (5) a PNC debit card with defendant's photograph and the name "Patrick Burke," (6) a Bank of America statement for "Johnny Lakes, dba, Lakes Towing & Recovery," (7) a folder containing defendant's Social Security card, (8) a "Zebra P120" digital printer for making identifications cards, and (9) 1000 blank identification cards.

¶ 12    Defendant was arrested almost two years later on September 4, 2018. The record does not explain this delay. The State charged him with identity theft (720 ILCS 5/16-30(a)(1) (West 2016)), two counts of financial institution fraud (*id.* § 17-10.6(c)(1)), loan fraud (*id.* § 17-10.6(d)), and wire fraud (*id.* 17-24(b)). These charges did not arise out of defendant's use of Dawe's credit card to buy furniture in November 2016. The charges were premised on defendant's use of Patrick Burke's identity to obtain a loan from PNC in October 2016.

¶ 13                              B. Pretrial Motions

¶ 14    On October 7, 2022, defendant filed a motion to suppress the evidence police recovered from apartment 1A during the warrant-authorized search on November 16, 2016. Defendant contended that the detectives' observations during the warrantless search the day prior could not serve as the basis for the warrant, and if those observations were excluded, there was no probable cause to issue the warrant. Defendant argued that the warrantless search on November 15, 2016, was unlawful because Feratovic did not have authority to consent to it. This motion did not request an evidentiary hearing.

¶ 15    The State moved to dismiss the motion to suppress. The State argued that defendant had no legitimate expectation of privacy in apartment 1A because he fraudulently leased it; therefore, he lacked standing to challenge the searches of the apartment. The State also contended that the emergency exception to the warrant requirement justified the detectives' warrantless search because Feratovic expressed concern that the apartment had been burglarized. The State further argued that even if the warrantless search on November 15, 2016, was unlawful, the search warrant was based on independent probable cause; namely, everything the detectives learned before and after the warrantless search. Finally, the State argued that the detectives acted in good faith "to

check for intruders" and "immediately left the apartment when they determined that there was no intruder."

¶ 16    On December 15, 2022, defendant filed a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* holds that (1) if a defendant makes a substantial showing that police included false statements in an affidavit for a search warrant and those false statements were necessary to the finding of probable cause, then the court must hold a hearing "at the defendant's request," and (2) if the defendant establishes the falsehood of the statements by a preponderance of the evidence and the court finds that the warrant lacked probable cause without those false statements, then the warrant is void and evidence seized pursuant to the warrant must be suppressed. *Franks*, 438 U.S. at 155-56. Defendant's *Franks* motion alleged that O'Connor's affidavit in support of his complaint for the search warrant contained false statements about Feratovic's role and interactions with the detectives. Defendant attached the affidavit of private investigator Frani Udell, who interviewed Feratovic on November 29, 2022. Feratovic told Udell he was a maintenance worker, not the building manager. Feratovic also told Udell that he never asked police to accompany him into apartment 1A, never asked police to walk through the apartment to determine whether it had been burglarized, never accompanied police into the apartment, and never let police into the apartment.

¶ 17    At a hearing on December 15, 2022, defendant stated that the parties were present "for oral argument" on the issue of his standing to challenge the searches. The parties agreed to resolve standing with respect to the motion to suppress before proceeding on the *Franks* motion. The court found that defendant's motion to suppress failed to establish his standing to challenge the searches of the apartment. The court allowed defendant to cure that defect by "testify[ing] that the location

set forth in that search warrant was his residence" or filing "an affidavit *** that defendant resided at that location." Defendant chose to submit an affidavit, and the court granted him leave to amend his motion to suppress. The court also set a date "to argue" the motion.

¶ 18    On December 22, 2022, defendant filed an amended motion to suppress. This motion was identical to the initial motion to suppress, except that defendant attached his and Feratovic's affidavits. Defendant's affidavit attested that he lived at 801 South Euclid Avenue, apartment 1A on November 15, 2016. Feratovic's affidavit was consistent with what he told investigator Udell.

¶ 19    On February 9, 2023, defendant informed the court that "both motions at this juncture the parties agree would only require legal arguments." The court's written order of that date stated that "Legal Arg[umen]ts" were needed on both of defendant's motions. On April 6, 2023, the parties agreed that the court still needed to rule on whether defendant had standing to challenge the searches of apartment 1A. They also agreed to set the motion to suppress "for argument" on May 10, 2023.

¶ 20    On May 10, 2023, the court held oral argument on the amended motion to suppress and the *Franks* motion. Defendant argued that his affidavit "remedied completely" the issue of standing. He contended that and the State's claim that he lacked standing because he leased the apartment fraudulently was irrelevant because the governing standard was whether he had a reasonable expectation of privacy in the apartment, not necessarily a lawful one. Defendant also argued that the detectives had no legal authority to conduct the warrantless search of the apartment on November 15, 2016, because Feratovic's affidavit established that he did not "allow the officers [in]to the apartment or ask them to walk through it," defeating any exceptions to the warrant requirement. Defendant asked the trial court to exclude the observations the detectives made

during the warrantless search on November 15, 2016, from the complaint for search warrant, and then determine whether probable cause supported the search warrant. Defendant contended that even if the detectives had probable cause to believe he committed a crime, they had no reason to think that evidence of that crime was inside the apartment until they unlawfully entered the apartment. Finally, defendant stated

> "[W]e're not here for an evidentiary hearing today. What we're arguing for is the right to get to an evidentiary hearing. That's of course what a motion for a *Franks* hearing is. Have we established that there could have been a misstatement in the application for the search warrant? And if the Court determines just that first hurdle, then we can get to an evidentiary hearing to see if the building manager [is] credible in what he said in the affidavit."

¶ 21    The State argued that defendant's affidavit did not establish standing because it did not claim that he had a legitimate expectation of privacy in the apartment. Rather, defendant obtained a lease to the apartment through fraud, and one cannot have a legitimate expectation of privacy in an area they occupy illegally. The State also contended that the warrantless search on November 15, 2016, was a "very minimal" entry "only to ascertain if there was an individual within the apartment." Additionally, the State argued that Feratovic's affidavit was not credible because he provided it almost seven years after the search. Finally, the State contended that even if the court removed from the complaint for search warrant the detectives' observations during the warrantless search on November 15, 2016, the complaint was still "replete with probable cause" supporting the search warrant.

¶ 22    In reply, defendant argued that "this is all just to get to a *Franks* hearing" and reiterated that he was "asking *** for a *Franks* hearing; and then if we get to that part, determine whether

the complaint for the search warrant had enough to establish probable cause that the items to be searched would be found in the apartment."

¶ 23    On June 23, 2023, the trial court ruled as follows:

> "Based on my review of all of the above, the arguments, the motions, responses, the law, I do find that a *Franks* hearing is not warranted.
>
> The evidence in the search warrant, even if you excised and took out [and] did not consider what[ ] stemmed from the affidavit [of] the maintenance [worker], I believe there was probable cause as the issuing judge for the search warrant did find. I do not find that a *Franks* hearing is warranted based on the totality of all the factors before the Court, and the defense motion for a *Franks* hearing is denied."

The court did not orally rule on defendant's amended motion to suppress evidence, and defendant did not request an oral ruling on that motion. Immediately after the denial of his *Franks* motion, defendant began discussing dates for a possible plea agreement and filing an answer. The court's written order of June 23, 2023, states that the court denied defendant's motion "to quash S[earch] W[arrant] &/or for *Franks* Hearing."

¶ 24                      C. Trial, Posttrial Motions, and Sentencing

¶ 25    At trial, detective O'Connor testified consistently with his affidavit in the complaint for the search warrant. O'Connor testified that he entered apartment 1A on November 15, 2016, "to see if somebody *** [was] in there or having a medical emergency." The following day, O'Connor returned with a search warrant and recovered (1) two iPhones, (2) a package addressed to defendant containing blank payroll checks and holograms for driver's licenses, (3) paperwork for a vehicle registered to defendant, (4) a Surface Pro tablet computer, (5) a PNC debit card with defendant's

photograph and Burke's name, (6) a Bank of America statement for "Johnny Lakes, dba, Lakes Towing & Recovery," (7) a folder containing defendant's Social Security card, (8) a "Zebra P120" digital printer for making identifications cards, and (9) 1000 blank identification cards. From the Surface Pro tablet computer, Oak Park detective Paul Kerley recovered (1) two W-2 forms bearing Burke's name, (2) an Illinois driver's license with defendant's photograph and Burke's name, (3) pay stubs for Burke from Great Expressions Dental, (4) Burke's credit report, and (5) a loan application sent to PNC Bank under Burke's name, which attached all the other documents. O'Connor then subpoenaed PNC and obtained documentation of a checking account opened under Burke's name and surveillance photographs from an ATM. In court, O'Connor identified all the above items, and the State moved them into evidence. After receiving the subpoena response from PNC, O'Connor interviewed Burke, who said he did not open the checking account or make any of the transactions in question.

¶ 26    Meghan Hobbs testified that she was a PNC financial advisor in October 2016. On October 11, 2016, she met with a man who claimed to be Patrick Burke and approved a $23,000 loan to him. Hobbs met with the man in her office for approximately 30 minutes but could not identify him in court. The man applying for the loan provided a photo identification that matched his appearance. Hobbs gave the man a $23,000 check payable to Patrick Burke and helped him deposit the check at an ATM in the bank branch. In surveillance photographs from the ATM, Hobbs identified herself and the man who claimed to be Burke. Oak Park police later contacted Hobbs and she identified the man who claimed to be Burke in a photo array on July 25, 2017. The State moved the photo array and an advisory form Hobbs signed into evidence. The State also recalled O'Connor, who testified that Hobbs identified defendant in the photo array.

¶ 27 The parties stipulated that Pamela Glass was a records custodian for PNC; she provided police with records relating to a PNC checking account opened in Burke's name on October 11, 2016. PNC investigative analyst Latitia Hamilton provided police with still photographs from an ATM surveillance camera at a PNC branch on North Avenue in Oak Park, which were related to the use of the checking account under Burke's name.

¶ 28 Patrick Burke testified that he never opened any accounts with or sought any loans from PNC. He did not know and had no connection to defendant. He never worked at a business called "Great Expectations Dental" and did not lose any money due to defendant's use of his identity.

¶ 29 The trial court found defendant guilty on all counts except wire fraud.

¶ 30 Defendant filed a motion for a new trial. A header in this motion claimed that the "amended motion to quash search warrant & suppress evidence should not have been denied without an evidentiary hearing." However, the "argument" under this header cited no legal authority and noted only that O'Connor and Feratovic gave different accounts of their interactions on November 15, 2016. At a hearing on the motion for a new trial, defendant asked "the Court to reconsider the denial of the pretrial motion[s] which requested a *Franks* hearing and an evidentiary hearing on the motion to quash and recall the warrant." The trial court denied defendant's motion for a new trial.

¶ 31 The trial court sentenced defendant to four years in prison on each count, all sentences to run concurrently.

¶ 32 Defendant timely appealed.

¶ 33                                    II. ANALYSIS

¶ 34    Defendant contends that the trial court erred by not holding an evidentiary hearing on his motion to suppress evidence. He also argues that trial counsel rendered ineffective assistance by not requesting an evidentiary hearing on the motion to suppress and by not developing this claim of error in his motion for a new trial.

¶ 35                          A. Evidentiary Hearing on Motion to Suppress

¶ 36    Defendant contends that the trial court erred by not holding an evidentiary hearing on his motion to suppress evidence. We note that this claim of error does not concern defendant's *Franks* motion. His opening brief frames the issue as "whether [the] court erred in not granting an evidentiary hearing on [the] non-*Franks* motion to suppress evidence."

¶ 37    Section 114-12 of the Code of Criminal Procedure of 1963 allows a defendant to file a motion to suppress evidence as the product of an unlawful search or seizure. 725 ILCS 5/114-12(a) (West 2016). That includes situations in which "[t]he search [or] seizure with a warrant was illegal because *** there was not probable cause for the issuance of the warrant," as defendant contends in this case. See *id.* § 114-12(a)(2). The defendant has the burden of proving that the search and seizure were unlawful. *Id.* § 114-12(b). "The judge shall receive evidence on any issue of fact necessary to determine the motion." *Id.*

¶ 38    The term "hearing" includes many different types of proceedings in the trial court, but this case concerns evidentiary hearings. An evidentiary hearing typically involves the presentation of live witness testimony and evidence. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 55.

¶ 39                                     1. Waiver

¶ 40    The State argues that defendant either forfeited, waived, or invited his claim that the trial court erred by not holding an evidentiary hearing on his motion to suppress evidence.

¶ 41 A trial court's decision not to hold an evidentiary hearing on a motion to suppress may be "justified upon the basis the defense did not request any such hearing, voiced no objection to proceeding without such a hearing, and made no offer of proof of evidence which would be presented at such a hearing." *People v. Atwood*, 193 Ill. App. 3d 580, 586 (1990). In that scenario, the defendant waives his right to an evidentiary hearing on the motion to suppress. *People v. Petak*, 2024 IL App (5th) 220641-U, ¶¶ 1, 27, 32. Furthermore, if the defendant does not request an evidentiary hearing on his motion to suppress and raise the lack of an evidentiary hearing in a motion for new trial, he waives for appellate review the issue of whether the trial court should have held an evidentiary hearing on the motion to suppress. *People v. Nestrock*, 316 Ill. App. 3d 1, 6 (2000); *People v. Walensky*, 286 Ill. App. 3d 82, 95-96 (1996).

¶ 42 In this case, defendant never requested an evidentiary hearing on his motion to suppress and nothing about his conduct suggested that he was seeking such an evidentiary hearing. Neither the initial nor the amended motion to suppress requested an evidentiary hearing. When the State responded to the initial motion to suppress by arguing that defendant failed to establish his standing to challenge the searches of apartment 1A, the trial court allowed defendant to establish standing by either testifying or submitting an affidavit. Defendant submitted an affidavit. That choice suggested that defendant wanted the court to resolve the issue of standing based on the pleadings, not at an evidentiary hearing. Defendant never issued subpoenas for witnesses or evidence, further indicating that he had no intention of litigating the motion to suppress at an evidentiary hearing.

¶ 43 Defendant never orally requested an evidentiary hearing on the motion to suppress either. On the contrary, he repeatedly told the trial court that he sought argument on legal issues. Based on those representations, the trial court held oral argument on May 10, 2023. During oral argument,

defendant did not request an evidentiary hearing on his motion to suppress. After the court denied

defendant's motion to suppress on June 23, 2023, defendant did not object or file a motion to

reconsider on the ground that the court failed to hold an evidentiary hearing. We can only conclude

that defendant waived his right to an evidentiary hearing on the motion to suppress. See *Atwood*,

193 Ill. App. 3d at 586; *Petak*, 2024 IL App (5th) 220641-U, ¶¶ 1, 27, 32.

¶ 44    The first time defendant claimed that the trial court should have held an evidentiary hearing

on the motion to suppress was in his motion for a new trial. But that "argument" was

a one-sentence header with no citation to legal authority. Therefore, we find that trial counsel did

not preserve for appeal defendant's right to an evidentiary hearing on his motion to suppress. See

*Nestrock*, 316 Ill. App. 3d at 6; *Walensky*, 286 Ill. App. 3d at 95-96.

¶ 45    Practical considerations support our finding of waiver. If a defendant seeks an evidentiary

hearing on a motion to suppress, he must make that clear to the trial court and the State. An

evidentiary hearing on a motion to suppress takes time and resources to prepare for and conduct.

The court must set aside time for the evidentiary hearing, which can span multiple days. See, *e.g.*,

*People v. Maury*, 2025 IL App (4th) 220887, ¶ 16 (evidentiary hearing on motion to suppress

included three days of evidence). The parties must schedule and subpoena witnesses. See, *e.g.*,

*People v. Weis*, 2022 IL App (5th) 210076-U, ¶ 59 (a defendant can subpoena police witnesses for

a hearing on a motion to suppress); *People v. Smith*, 362 Ill. App. 3d 1062, 1074-78 (2005)

(explaining how a defendant can summon out-of-state witnesses to testify at a hearing on a motion

to suppress). Sometimes discovery is needed before the motion to suppress can proceed to an

evidentiary hearing. See, *e.g.*, *People v. Jones*, 2023 IL App (1st) 221311, ¶ 44 (defendant

subpoenaed records from the ShotSpotter gunshot detection system in anticipation of his motion

to suppress). It is unreasonable for a defendant to remain silent about whether he seeks an evidentiary hearing on a motion to suppress, wait until after a guilty verdict at trial, and then claim that he wanted an evidentiary hearing on his motion to suppress after all. We hold that trial counsel waived defendant's right to an evidentiary hearing on the motion to suppress and failed to preserve for review the issue of whether the trial court was required to hold an evidentiary hearing on that motion.

¶ 46                                2. Defendant's Arguments

¶ 47                                a. Requests for a Hearing

¶ 48    Defendant contends that he did not waive this issue because his requests for a "hearing" signaled that the trial court should hold an evidentiary hearing on the motion to suppress. We disagree. In context, defendant's requests for a "hearing" referred to oral argument on legal issues, not an evidentiary hearing.

¶ 49    For example, when the State moved to dismiss defendant's initial motion to suppress, defendant asked the trial court "for a date to reply, or in the alternative set for hearing." The court agreed to "set it for hearing," but there was no discussion of presenting witnesses or evidence. Neither the court nor the State interpreted defendant's request as a request for an evidentiary hearing. *Cf. People v. Nash*, 2024 IL App (4th) 221078, ¶¶ 19-20 (illustrating how a court typically schedules an evidentiary hearing on a motion to suppress). Indeed, at the next court date, defendant said that the parties were present "for oral argument" on the motion to suppress. On December 22, 2022, the State asked to "set this down for hearing." At the hearing that followed on February 9, 2023, defendant stated that the motion to suppress "only require[d] legal arguments." No reasonable trial court judge would interpret that as a request for an evidentiary hearing.

¶ 50                                  b. Automatic Evidentiary Hearings

¶ 51    Defendant suggests that Illinois law requires an evidentiary hearing on every motion to suppress regardless of whether the defendant requests one. Defendant highlights section 114-12(b)'s mandatory language that the trial court "*shall* receive evidence on any issue of fact" necessary to determine the motion." (Emphasis added.) 725 ILCS 5/114-12(b) (West 2016). He also argues that "[a] motion to suppress is, in effect, a pleading to the extent it frames the issues to be determined *in a pretrial hearing on the motio*n. *** A pleading thus both defines and limits the areas of consideration at a trial *or other evidentiary hearing*." (Emphasis added and internal quotation marks omitted.) *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 60.

¶ 52    But Illinois authority does not go so far as saying that filing a motion to suppress automatically triggers an evidentiary hearing. Rather, our cases hold that a defendant has a *right* to an evidentiary hearing on a motion to suppress. See, *e.g.*, *People v. Robinson*, 46 Ill. 2d 229, 231-32 (1970) ("there is no question that a defendant has a right to a fair and impartial hearing to determine whether" an eyewitness identification was the product of suggestive police procedures); *People v. Stiles*, 95 Ill. App. 3d 959, 964-65 (1981) ("It is fundamental that a defendant is entitled to a full and fair hearing on [a] motion to suppress."); *People v. Fultz*, 32 Ill. App. 3d 317, 331-32 (1975) (when a defendant timely files a motion to suppress his confession as involuntary, "he is then constitutionally entitled to a hearing on the issue.").

¶ 53    A defendant can waive his right to an evidentiary hearing. *Atwood*, 193 Ill. App. 3d at 586; *Petak*, 2024 IL App (5th) 220641-U, ¶¶ 1, 27, 32. Waiver is the voluntary relinquishment of a right. *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 15. That is what happened in this case. The trial court was not required to force defendant to conduct an evidentiary hearing on the motion to

suppress when he did not request and apparently did not want such a hearing. See *Atwood*, 193 Ill. App. 3d at 586.

¶ 54                                    c. Factual Issues

¶ 55    Defendant argues that his motion to suppress raised factual issues on which the trial court was required to receive evidence pursuant to section 114-12(b). See 725 ILCS 5/114-12(b) (West 2016). Defendant identifies these factual issues as (1) whether he had standing to challenge the searches of apartment 1A, (2) whether Feratovic could consent to the warrantless search of the apartment, (3) whether any exceptions to the warrant requirement applied, and (4) if the warrantless search was unlawful, whether that unlawful search influenced the detectives' decision to seek the warrant or the magistrate's decision to issue it, rendering the warrant invalid.

¶ 56    Defendant's motion to suppress may have put these factual issues before the court, but defendant chose not to proceed on them. Rather, he wanted the trial court to resolve standing based on the pleadings, then address Feratovic's supposed consent and concern about a recent burglary in the context of the *Franks* motion.

¶ 57    Some Seventh Circuit cases hold that a trial court must conduct an evidentiary hearing on a motion to suppress if the motion presents a material dispute of fact about whether the search or seizure was lawful; the court cannot resolve such a motion on affidavits alone. See, *e.g.*, *United States v. Robles*, 37 F.3d 1260, 1265 (7th Cir. 1994); *United States v. Berkowitz*, 927 F.2d 1376, 1385 (7th Cir. 1991). But the decisions of federal appellate courts are not binding upon us. *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 48. We follow Illinois authority holding that a defendant can waive his right to an evidentiary hearing. Accordingly, we find that defendant waived his right to an evidentiary hearing on his motion to suppress.

¶ 58                    B. Ineffective Assistance of Counsel

¶ 59    Defendant argues that trial counsel rendered ineffective assistance by not requesting an evidentiary hearing on his motion to suppress and not developing this claim of error in his motion for a new trial.

¶ 60    To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that (1) counsel's performance was objectively unreasonable and (2) there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance, *i.e.*, prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81. We review the ultimate legal issue of whether counsel rendered ineffective assistance *de novo*. *People v. Ortega*, 2020 IL App (1st) 162516, ¶ 24.

¶ 61                                1. Prejudice

¶ 62    "To establish prejudice when an ineffective assistance claim is based on trial counsel's failure to file a suppression motion, a defendant must demonstrate that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Webb*, 2023 IL 128957, ¶ 23. In this case, counsel filed a motion to suppress but never meaningfully pursued it beyond attempting to establish defendant's standing with an affidavit. Abandoning a motion to suppress before an evidentiary hearing is functionally the same as not filing one. Therefore, *Webb*'s prejudice analysis applies to this case.

¶ 63    Defendant's motion to suppress was meritorious. There is no dispute that Oak Park detectives conducted a warrantless search of apartment 1A on November 15, 2016. O'Connor's affidavit establishes as much. A warrantless search of a home is presumptively unreasonable.

*Payton v. New York*, 445 U.S. 573, 586 (1980). The following day, O'Connor included his observations during the warrantless search in his complaint for the search warrant. Therefore, it appears that the warrantless search led O'Connor to seek, and the magistrate to issue, the search warrant. Police conducting a warrantless and unlawful search of a home, then obtaining a warrant and returning to seize items they saw during the unlawful search, violates the fourth amendment unless the warrant is genuinely independent of the warrantless search. *Murray v. United States*, 487 U.S. 533, 542 (1988); *People v. Carter*, 284 Ill. App. 3d 745, 752 (1996). In other words, if what police saw during their warrantless search did *not* influence their decision to seek a warrant, then the warrant is genuinely independent, and the magistrate's decision to issue it is proper. *Murray*, 487 U.S. at 542; *Carter*, 284 Ill. App. 3d at 752. In this case, O'Connor's affidavit was evidence that the warrant was not independent of the warrantless search and was therefore invalid. There is a reasonable likelihood defendant would have prevailed on his motion to suppress. See *Patterson*, 2014 IL 115102, ¶ 81.

¶ 64    Trial counsel's abandonment of the motion to suppress prejudiced defendant at trial. The only reason the detectives discovered defendant's use of Burke's identity to obtain a $23,000 loan from PNC was because they conducted a warrantless and presumptively unlawful search of apartment 1A on November 15, 2016, then obtained a warrant apparently based on that search.

¶ 65    Prior to the warrantless search, the detectives were investigating defendant's use of Dawe's credit card to buy furniture. The apartment searches revealed (1) a debit card in Burke's name and (2) electronic equipment for identity theft, which contained false documents bearing Burke's name, such as paystubs and W-2 forms. Absent those searches, the detectives likely would not have known of any connection between defendant and Burke. That connection led to trial

evidence and witnesses from PNC, such as the ATM surveillance photographs and Meghan Hobbs. So, it appears that the State's evidence of defendant fraudulently obtaining the loan all stemmed from the warrantless search. Had counsel sought and obtained suppression of that evidence as fruits of the unlawful apartment searches, the State would have had no trial evidence connecting defendant to Burke. See *People v. McClendon*, 2022 IL App (1st) 163406, ¶ 28 (firearm should have been suppressed where the only reason police saw the firearm was because they were illegally arresting and searching the person who dropped it); *People v. Craine*, 2020 IL App (1st) 163403, ¶ 57 (firearm and cannabis recovered during a search of a house should have been suppressed where police were in the house only to make an illegal arrest). Therefore, there is a reasonable probability that the outcome of trial would have been different had trial counsel pursued the motion to suppress. See *Webb*, 2023 IL 128957, ¶ 23. Defendant has established the prejudice prong of *Strickland*.

¶ 66                                    2. Objective Reasonableness

¶ 67     To establish that counsel's performance was objectively unreasonable, "a defendant must prove that counsel's performance, judged by an objective standard of competence under prevailing professional norms, was so deficient that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *Id.* ¶ 22. Decisions regarding motions to suppress are generally matters of trial strategy (*id.*), including the decision to abandon a motion to suppress (*People v. Carballido*, 2011 IL App (2d) 090340, ¶ 44). To overcome the trial strategy presumption, the defendant must show a "reasonable probability" that the motion would have succeeded and the outcome of trial would have been different. *People v. Page*, 2024 IL App (1st) 220830, ¶ 21 (citing *People v. Henderson*, 2013 IL 114040, ¶¶ 11, 15).

¶ 68    Defendant has already made that showing, as explained above. Trial counsel abandoned a viable motion to suppress without even requesting an opportunity to present evidence on that motion. See *People v. Stark*, 59 Ill. App. 3d 676, 678-79 (1978) (the defendant filed a motion to suppress evidence as the product of an invalid search warrant but did not challenge the trial court's denial of the motion; therefore, defense counsel abandoned the motion to suppress). If nothing else, requesting an evidentiary hearing would have preserved this issue for review. See *Nestrock*, 316 Ill. App. 3d at 6; *Walensky*, 286 Ill. App. 3d at 95-96. Counsel also did not request that the trial court "state the findings of facts and conclusions of law upon which the [denial of his motion to suppress was] based," which the court was obligated to provide. See 725 ILCS 5/114-12(e) (West 2016). Trial counsel could not have made an informed strategic decision about how to proceed without such a ruling.

¶ 69    When the trial court denied defendant's *Franks* motion, trial counsel immediately gave up on the motion to suppress. There is no strategic reason for that decision. The trial court's denial of the *Franks* motion did not defeat the motion to suppress. Under *Franks*, "if, after the alleged untruths in a warrant affidavit are excised, the remainder is sufficient to establish probable cause, no hearing is required on the defendant's motion, and suppression will not result." *People v. Lucente*, 116 Ill. 2d 133, 145 (1987); see also *People v. Sutherland*, 223 Ill. 2d 187, 218 (2006). That is what the trial court found in this case.  But under *Murray* and *Carter*, a search warrant is invalid if an earlier warrantless search *prompted* the officers' decision to seek the warrant or the magistrate's decision to issue it. *Murray*, 487 U.S. at 542; *Carter*, 284 Ill. App. 3d at 751-52. As explained above, that appears to be the case here, given O'Connor's affidavit. The trial court never conducted this analysis because trial counsel never requested the court to do so. Counsel chose the

more difficult path—*Franks* instead of *Murray* and *Carter*—and then abandoned a viable theory of suppression without even attempting to preserve this issue for review and without asking for a clear ruling. That was objectively unreasonable. Therefore, we find that defendant has established both prongs of *Strickland*.

¶ 70                                    III. CONCLUSION

¶ 71     For the foregoing reasons, we reverse defendant's convictions and remand for the trial court to conduct a hearing on defendant's motion to suppress evidence. See *Page*, 2024 IL App (1st) 220830, ¶ 45 (citing *People v. Moore*, 307 Ill. App. 3d 107, 114 (1999)); *People v. Crump*, 2021 IL App (1st) 182282-U, ¶ 74. At the evidentiary hearing, the parties may present evidence regarding, and the trial court may decide, the following issues: (1) whether defendant had a reasonable expectation of privacy in apartment 1A and, therefore, has standing to challenge the searches of the apartment; (2) whether the warrantless search of November 15, 2016, was lawful; (3) if the warrantless search was unlawful, whether it prompted the detectives to seek, or the magistrate to issue, the warrant on November 16, 2016; and (4) if the warrant was invalid, what evidence should be suppressed. The parties may also present evidence regarding, and the trial court may also decide, "any issue of fact necessary to determine the motion." See 725 ILCS 5/114-12(b) (West 2016).

¶ 72     Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967), allows us to " 'set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken.' " *People v. Hill*, 2021 IL App (1st) 131973-B, ¶ 15 (quoting Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967)). We may "revest the trial court with jurisdiction to complete [those] proceedings [we] found deficient before resuming consideration of the appeal." *Id.* ¶ 18.

"[W]hen the appellate court finds further trial court hearings are called for in a criminal case the procedure preferred by our supreme court is to remand for those hearings while retaining jurisdiction." *Id.* ¶ 15 (citing *People v. Garrett*, 139 Ill. 2d 189, 194 (1990)). Accordingly, we retain jurisdiction over this case.

¶ 73    Reversed and remanded with directions.